IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THOMAS E. BARON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05-3240 |
| | ) | |
| FAYEZ CHEHAB, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Randolph Martin's revived Motion to Dismiss (d/e 14). Martin relied on matters outside the pleadings to support the Motion, so the Court gave the parties notice that the Motion would be treated as a motion for summary judgment. The parties were given the opportunity to submit additional materials in relation to the Motion, and the parties have now completed their submissions. The submissions establish that Defendant Randolph Martin received a discharge in bankruptcy which discharged the Plaintiffs' claims against him. The discharge permanently enjoined the Plaintiffs from bringing this action against him. The Motion is therefore allowed.

1

STATEMENT OF FACTS

In the year 2000, Defendant Randolph Martin and others recruited Plaintiffs Thomas Baron, M.D. and his wife Linda Baron, Christopher Mallavarapu, M.D. and his wife Janet Mallavarapu, and Robert Trask, M.D. and his wife Mary Trask (Individual Plaintiffs), as investors in an Argentine airline known as American Falcon, S.A. (AMFAL).[1]  According to the Plaintiffs' submissions, Martin omitted material information from his representations in order to induce them to invest.  <u>Plaintiffs' Statement of Material Facts in Opposition to Defendant Randolph Martin's Motion to Dismiss Complaint (d/e 74)</u>, <u>Statement of Undisputed Fact (Plaintiffs' Statement of Fact)</u>, ¶ 5.  On or before June 1, 2000, the Individual Plaintiffs began investing in AMFAL and continued to invest in AMFAL and related entities.  <u>Id.</u>, ¶¶ 3-4.  If they had known the material information that Martin omitted from the representations in 2000, the Individual Plaintiffs state they would never have agreed to invest.  <u>Id.</u>, ¶ 7.

The Plaintiffs First Amended Complaint (d/e 39) alleges that the Individual Plaintiffs lost millions of dollars between 2000 and 2005 as a

---

[1] Plaintiffs ROTFL, LLC, and ALPHA FOXTROT, LLC, have submitted no evidence to oppose Martin's motion for summary judgment.

result of these investments. According to the Amended Complaint, Martin's participation in the scheme ended with the initial recruiting of investors, such as the individual Plaintiffs, making the June 2000 investment. Beginning in November 2000, however, Co-defendants Fayez Chehab and Willis Chrans asked the AMFAL investors, including the Individual Plaintiffs, to invest more money in AMFAL. Id., ¶ 63. In February 2001, Chrans told AMFAL investors, including the Individual Plaintiffs, that AMFAL had suffered $2.1 million in losses, and such losses were 250% above the level projected by the Defendants. Id., ¶ 65. In April 2001, Chrans reported at an AMFAL shareholder's meeting that AMFAL was not generating sufficient revenues to make distributions or meet its financial obligations. He told shareholders that AMFAL would need additional capital to avoid shutting down. Id., ¶ 67. In April 2001, Chehab and Chrans told AMFAL investors, including the Individual Plaintiffs, that AMFAL needed $3,000,000.00 in additional capital. Id., ¶ 68.

In May 2001, Chehab told AMFAL investors, including the Individual Plaintiffs, that AMFAL required additional cash immediately to avoid filing bankruptcy. Id., ¶ 69. In May 2001, the Individual Plaintiffs, as married couples, each invested another $300,000.00 in AMFAL. Id., ¶ 70. In May

3

2001, AMFAL was not generating the promised dividends to AMFAL Investment to service the debt guaranteed by the Individual Plaintiffs. Id., ¶ 71.

In July 2001, the AMFAL investors, including the Individual Plaintiffs, had to cover AMFAL's loan payment. Id., ¶ 72. The Individual Plaintiffs had each guaranteed $300,000.00 of AMFAL's debt to the Bank of Springfield (Bank) as part of their initial investments. In August 2001, the Bank called those guarantees, and the Individual Plaintiffs converted those guarantees into three personal loans, one for each married couple, with the principle balance of each loan totaling $248,510.00. Amended Complaint, ¶¶ 50-53, 71-76.

Beginning in November 2001, Chehab sent emails to AMFAL investors, including the Individual Plaintiffs, stating that AMFAL required additional capital to avoid bankruptcy. On December 12, 2001, Chehab sent an email admonishing AMFAL investors, including the Individual Plaintiffs, to commit to additional funding for AMFAL and threatening to place AMFAL in bankruptcy on December 17, 2001. Id., ¶ 95. In January 2002, the Mallavarapus and the Trasks each invested an additional $121,216.00 in cash in AMFAL.

On May 24, 2002, Martin filed a petition in bankruptcy for relief under Chapter 7 of the Bankruptcy Code. In re Martin, U.S. Bankruptcy Court, Central Dist. of Illinois, Case No. 02-72273. He did not list the Individual Plaintiffs as creditors in his petition. The Individual Plaintiffs state that if they had known the facts that Martin omitted from his representations to them in 2000, they would have filed claims against him in his bankruptcy proceeding and would have actively participated in the bankruptcy proceeding to enforce their claims. Plaintiffs' Statement of Fact, ¶¶ 12-13. They claim that because they did not know the truth about the omissions, they did not participate in the bankruptcy.

Martin received a discharge in bankruptcy on October 31, 2002. The Individual Plaintiffs state that in 2005, they ultimately learned of the facts that were omitted from Martin's representations made in 2000. Id., ¶ 14.

## ANALYSIS

Martin moves for summary judgment. To prevail, Martin must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to the Plaintiffs. Any doubt as to the existence of a genuine issue for trial must

5

be resolved against Martin. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once Martin has met his burden, the Plaintiffs must present evidence to show that issues of fact remain with respect to an issue essential to their case, and on which they will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Martin states that the Individual Plaintiffs' claims against him have been discharged in his bankruptcy. He is correct. When read in the light most favorably to the Plaintiffs, the evidence indicates that Martin participated in a scheme to defraud the Individual Plaintiffs in 2000 by making representations that omitted material facts in order to induce them to invest in AMFAL. Martin filed bankruptcy in 2002 and received a discharge. The Individual Plaintiffs state they would have asserted claims in the bankruptcy in 2002 if they had known that Martin's representations in 2000 omitted material information. The Individual Plaintiffs, thus, were aware of Martin's bankruptcy, but did not participate because they did not realize at the time that Martin had defrauded them.

Under the Bankruptcy Code, the Individual Plaintiffs had claims against Martin at the time that he filed bankruptcy. A claim in bankruptcy

6

is a, "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . . ." 11 U.S.C. § 101(5)(A). Again, when read in a light most favorable to Plaintiffs, the evidence indicates the Individual Plaintiffs had a right to payment at the time that they were allegedly defrauded in 2000. The right to payment was contingent, unmatured and unliquidated, but it existed. Their right to payment also started to mature as early as 2001, when their initial $300,000.00 guaranties were called. Thus, the Individual Plaintiffs had claims against Martin at the time he filed bankruptcy in 2002.

Martin then received a discharge in bankruptcy. As a result, creditors, such as the Individual Plaintiffs, are permanently enjoined from attempting to collect on their claims. 11 U.S.C. § 524(a)(2). The Individual Plaintiffs, thus, cannot proceed against Martin. Martin is entitled to summary judgment.

The Individual Plaintiffs argue that their claims were not discharged in bankruptcy because Martin did not list them as creditors and did not reveal to them, prior to receiving a discharge, that he had omitted material information in his representations in 2000. The Bankruptcy Code exempts

from discharge claims of creditors who are not listed unless the creditors had actual knowledge of the existence of the bankruptcy proceeding in time to participate in the bankruptcy. 11 U.S.C. § 523(a)(3). The Individual Plaintiffs knew of Martin's bankruptcy proceeding. They state that they would have participated in the bankruptcy proceeding if they had known that Martin omitted material information in his representations in 2000. Since they had actual knowledge of the bankruptcy and admit that they could have participated in the proceeding, the exemption of § 523(a)(3) does not apply.

The Individual Plaintiffs argue that their claims were not discharged in bankruptcy because they did not have a meaningful opportunity to participate. They argue that their claims did not exist at the time of the bankruptcy because, "no steps were taken to bring the liability into the bankruptcy process, there were no protections to assure procedural fairness, and there was no fair representation of the claimants' interest in the bankruptcy proceeding." Response to Defendant Randolph Martin's Motion to Dismiss Complaint (d/e 24) at 12. However, the Individual Plaintiffs knew of the bankruptcy, and so they had ample opportunity to bring their claims of liability into the bankruptcy process. The bankruptcy

process would have provided extensive procedural protections, had they elected to take advantage of those protections. E.g., 11 U.S.C. § 523(a)(2)(A) (providing a process to exempt claims based on fraud from discharge). The interests of creditors, such as the Individual Plaintiffs, were also represented by the trustee appointed in Martin's Chapter 7 bankruptcy. 11 U.S.C. §§ 701-704. The Individual Plaintiffs' interests were amply protected by the bankruptcy process.

The Individual Plaintiffs, however, argue that their situation is analogous to creditors injured in mass tort or product liability cases. In those situations, a debtor typically placed a product in commerce or took some act that created a risk of harm and then filed bankruptcy and received a discharge. The tort creditor either: (1) came into contact with the product or the risk of harm after the discharge was entered and was injured, or (2) came in contact with the risk of harm before the bankruptcy, but the injury did not develop until after the bankruptcy was filed. Several courts have found that in these circumstances, a claim did not arise until the harm to the creditor occurred or developed. See e.g., In re Fairchild Aircraft Corp., 184 B.R. 910 (Bankr. W.D. Tex. 1995), vacated, 220 B.R. 909 (Bankr., W.D. Tex. 1998) (aircraft built before 1986, manufacturer filed bankruptcy

9

in 1990, and individual tort creditors injured by aircraft in 1993); <u>In re UNR Industries, Inc.</u>, 224 B.R. 664, 671 (Bankr. N.D. Ill. 1998) <u>and cases cited therein</u> (former employees worked for asbestos manufacturer in 1960s, manufacturer filed bankruptcy in 1982, and former employees developed pulmonary fibrosis in 1997).

    These cases do not apply here. The Individual Plaintiffs were allegedly duped by Martin and his compatriots in 2000 into investing in AMFAL. They were injured at that time. Their injuries started to become manifest in 2001; by then: (1) the Individual Plaintiffs knew that (a) AMFAL's loses were 250% above projections; (b) AMFAL was not generating enough income to service its debt or meet its other financial obligations; and (c) AMFAL was close to filing bankruptcy in May 2001 and again in December 2001; and (2) the Individual Plaintiffs had to pay the debt service to avoid a default on the debt that they had personally guaranteed, and they ultimately had to make good on their initial $300,000.00 guarantees of AMFAL's debt. By the time Martin filed bankruptcy in 2002, they clearly had notice that the original representations made to induce their June 2000 investment were wrong, and they had already suffered significant injuries. They knew about Martin's bankruptcy and could have participated in it, but

did not. The situation is not at all like the creditor who either was injured by a product long after the manufacturer filed bankruptcy, or developed a disease long after exposure to a risk of harm. The cases cited by the Plaintiffs do not apply. The Plaintiffs are enjoined by § 524 of the Bankruptcy Code from proceeding against Martin.

THEREFORE, Defendant Randolph Martin's Motion to Dismiss Complaint (d/e 14) is ALLOWED. Summary judgment is entered in favor of Defendant Randolph Martin and against all Plaintiffs. Defendant Martin is dismissed as a party to this proceeding.

IT IS THEREFORE SO ORDERED.

ENTER: May 10, 2006.

> FOR THE COURT:
>
>        s/ Jeanne E. Scott
> JEANNE E. SCOTT
> UNITED STATES DISTRICT JUDGE